750 S.E.2d 85

**In the Matter of Michael O'Brien NELSON, Respondent.**

Appellate Case No.2013–000964.

No. 27327.

Supreme Court of South Carolina.

Heard July 10, 2013.

Decided Oct. 23, 2013.

Lesley M. Coggiola, Disciplinary Counsel, and Julie M. Thames, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

M. Dawes Cooke, Jr., of Barnwell Whaley Patterson & Helms, LLC, of Charleston, for respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to the imposition of a public reprimand or definite suspension not to exceed nine (9) months. He further agrees to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct (the Commission) within thirty (30) days of the imposition of a sanction and to complete the Legal Ethics and Practice Program Ethics School within nine (9) months of the imposition of a sanction. We accept the Agreement and suspend respondent from the practice of law in this state for six (6) months, retroactive to June 1, 2013, the last date of his employment with the Ninth Circuit Solicitor's Office. In addition, within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission and, within nine (9) months of this opinion, shall complete and provide proof of completion of the Legal Ethics and Practice Program to the Commission. The facts, as set forth in the Agreement, are as follows.

## *Facts*

At the time of the misconduct giving rise to this proceeding, respondent was employed as an assistant solicitor in the Ninth Circuit Solicitor's Office. On Sunday, July 8, 2007, respondent's cousin (Cousin) called respondent to tell him he had been summoned for jury duty. Cousin apparently asked respondent how to avoid serving on a jury. Respondent told Cousin to tell the court that he ran a business that could not open if he had to serve on a jury. Respondent also told Cousin to tell the court that his cousin was an assistant solicitor.

The following day, Monday, July 9, 2007, jury qualifications were held and a jury was selected for the criminal trial. During voir dire, Cousin did not inform the court that his cousin was an assistant solicitor. Cousin was selected to serve as a juror on a criminal case.[1]

The criminal trial proceeded with the State being represented by a deputy solicitor[2] and an assistant solicitor. On Tuesday, July 17, 2007, the State rested its case before the lunch break. After the lunch break, defense counsel informed the court that he had learned over the previous weekend that one of the jurors was a cousin of respondent who was an assistant solicitor. Prior to returning to the courtroom after the lunch break, defense counsel had asked respondent about the relationship and respondent admitted to defense counsel that his cousin was on the jury. Defense counsel related that respondent told him that he (respondent) had spoken to the assistant solicitor prosecuting the case before the jury was selected. Defense counsel also related that respondent said Cousin had called him after he was seated on the jury, but respondent refused to speak to him.

A break was taken. Defense counsel and the deputy solicitor spoke with respondent off the record. Defense counsel then informed the court that respondent told defense counsel and the deputy solicitor that the trial judge had asked him to leave the courtroom because of his relationship with the juror.

---

1. Respondent was not on the Solicitor's Office team prosecuting the defendant.

2. The deputy solicitor was lead counsel for the prosecution.

The trial judge replied that respondent had "just assumed that" and then he "just generally told [respondent] to leave the courtroom." Defense counsel related that respondent told defense counsel and the deputy solicitor that he believed that Cousin had reported to the court that he was related to respondent. Respondent stated he had been contacted several times by Cousin after the empanelling of the jury, but he did not respond or said he could not respond.

Defense counsel requested the trial judge dismiss Cousin and ask respondent about the situation. The trial judge stated he would dismiss Cousin; he also said he "was just joking when he told [respondent] to leave the courtroom if he had any connection to a juror." The trial judge noted that they had checked and determined that Cousin had not disclosed his relationship to respondent during *voir dire*.

Cousin was brought into the courtroom and questioned about his relationship with respondent. He admitted they were cousins and that he had failed to respond to "that question" during *voir dire*. Cousin explained that, during *voir dire*, another juror stood up and the judge asked if it would have any effect on the juror's impartiality. Cousin stated he knew his relationship with respondent would not have any effect on his impartiality so he did not disclose his relationship with respondent.[3] Cousin admitted he had spoken with respondent since the trial had begun but only about respondent's wedding. Cousin also stated he did not disclose his relationship with respondent to any of the jurors.[4] Cousin was excused from the jury.

The next morning, Wednesday, July 18, 2007, defense counsel brought the issue up again because he was concerned respondent had told him in the hall that he had not had any discussions with Cousin, but Cousin had told the court that

---

3. According to the Agreement, the transcript of the trial reveals that, during jury selection, there were no questions about any juror's relationship with the Solicitor's Office that elicited a response from the jury panel and, therefore, Cousin could not have heard this question and answer previously.

4. The jury panel was later polled and one of the jurors said Cousin told him his cousin worked in the Solicitor's Office. Another juror stated Cousin told her his cousin worked in the building.

they discussed respondent's wedding. Defense counsel was concerned about the inconsistency between what Cousin told the court and what respondent told the court. He was also concerned about communications Cousin may have had with other members of the jury.

Respondent was called into the courtroom and questioned by the trial judge with regard to his contact with Cousin. Respondent stated under oath that Cousin called him Friday or Saturday night (over the weekend break during the course of the trial). Cousin had received respondent's invitation to respondent's engagement party and they spoke briefly about the party. Respondent said he told Cousin that he could not talk about anything else.

Respondent also said he received a telephone call from Cousin "yesterday at lunch," which would have been Tuesday, July 17. Respondent said he did not answer, but texted Cousin and told him he could not talk to him. Respondent stated, "[t]hat was pretty much it, Your Honor."

Respondent also stated he told his Cousin in the beginning that he could not talk to him about the case. However, respondent revealed there was more to the conversation than he originally admitted when the trial judge asked respondent if his cousin mentioned the case and respondent replied, "[s]aying he's on the jury and blah-blah-blah, not anything on the facts." Respondent said Cousin had called him before the trial asking him how to get off jury duty and then called him again after he was selected and told respondent he was on the jury. Respondent stated Cousin called him after he was selected for the jury and asked respondent to have lunch on Monday, July 9th. Respondent told Cousin he had gone home from work sick; they did not go to lunch.

The trial judge then asked when respondent told the other members of the Solicitor's Office that his cousin was on the jury. Respondent stated he did not remember if he spoke to the assistant solicitor assigned to the case before or after Cousin was picked but he remembered he told the deputy solicitor after. The trial judge asked respondent if it was before Cousin was selected or before qualifications. Respondent stated, "I'm not sure about before qualifications. I'm

almost positive I told him after he was selected." Respondent was excused from the courtroom.

After further discussion, respondent was called back into the courtroom. The trial judge asked respondent exactly when he disclosed that his cousin was selected on the jury. Respondent said he was not certain, that he thought it was Monday morning,[5] but he did not remember. Although he had previously stated he was "almost positive" it was after his cousin was selected, respondent said he was talking about the jury qualifications, not the panel. Respondent then told the court that he did not mention Cousin's name "to anybody here" but that there were people in the office that knew Cousin and that he told them his cousin was on the jury. Respondent said the conversations were in passing but he thought he told these people that Cousin was on the jury after he was selected. Respondent stated the conversations were not important to him and he made no effort to ensure that the court was aware of the relationship.

Defense counsel asked respondent if he had told him in the hall that he had spoken to the assistant solicitor after the jury was selected and told the assistant solicitor that his cousin was on the jury. Again, respondent did not give a direct answer and said he was not sure.

During a post-trial motion, defense counsel offered a telephone log from SunCom demonstrating the numerous telephone and text contacts between respondent and Cousin between July 6 and July 18. The court accepted the log as an exhibit. The log provides the following information.

On Monday, July 9, the day the jury was selected, court recessed for the day at 12:00 p.m. The following contacts occurred on July 9, 2007:

| Type | From | To | Time | Duration |
|------|------|-----|------|----------|
| Telephone | Respondent | Cousin | 08:42:03 | 0:00:56 |
| Text | Cousin | Respondent | 08:46 | |
| Text | Respondent | Cousin | 10:08 | |
| Text | Cousin | Respondent | 10:40 | |
| Text | Respondent | Cousin | 10:41 | |
| Text | Cousin | Respondent | 10:42 | |
| Text | Respondent | Cousin | 10:47 | |

5. This was the day of jury selection.

| | | | | |
|---|---|---|---|---|
| Telephone | Cousin | Respondent | 10:47:44 | 0:01:05 |
| Telephone | Cousin | Respondent | 10:49:33 | 0:03:42 |
| Telephone | Cousin | Respondent | 12:05:52 | 0:00:07 |
| Telephone | Respondent | Cousin | 12:06:26 | 0:02:55 |
| Text | Cousin | Respondent | 14:33 | |
| Text | Cousin | Respondent | 14:43 | |
| Telephone | Cousin | Respondent | 16:25:30 | 0:00:31 |
| Telephone | Cousin | Respondent | 20:30:47 | 0:03:16 |
| Telephone | Respondent | Cousin | 20:35:04 | 0:00:21 |

On Tuesday, July 10, 2007, court did not convene. There were no confirmed telephone or text contacts between respondent and Cousin on that day.

Court reconvened at 2:00 p.m. on Wednesday, July 11, 2007, and recessed at 5:00 p.m. (17:00). The following contacts occurred on Wednesday, July 11, 2007:

| Type | From | To | Time | Duration |
|---|---|---|---|---|
| Telephone | Cousin | Respondent | 17:10:11 | 0:00:03 |
| Text | Cousin | Respondent | 17:14 | |
| Telephone | Cousin | Respondent | 17:15:20 | 0:00:29 |
| Telephone | Respondent | Cousin | 17:15:25 | 0:00:23 |

On Thursday, July 12, 2007, the court convened at 9:30 a.m. and recessed for lunch at 12:00 p.m. The court reconvened at 1:30 p.m. (13:30) and recessed for the day at 4:50 p.m. (16:50). The following contacts occurred on Thursday, July 12, 2007.

| Type | From | To | Time | Duration |
|---|---|---|---|---|
| Telephone | Cousin | Respondent | 12:04:36 | 0:00:08 |
| Text | Cousin | Respondent | 12:06 | |
| Telephone | Cousin | Respondent | 12:06:48 | 0:00:07 |

Court was in session on Friday, July 13, 2007. There are no confirmed contacts between respondent and Cousin on Friday, July 13. There are no confirmed telephone or text contacts between respondent and Cousin on Saturday, July 14, Sunday, July 15, or Monday, July 16, during which time court was not in session.

Court reconvened on Tuesday, July 17, 2007, at 9:30 a.m. The State rested on Tuesday, July 17, 2007, before the lunch break. The court recessed for lunch at 11:55 a.m. and reconvened at 1:30 p.m. (15:30). The court recessed for the day at 5:35 p.m. (17:35). The following contacts between respondent and Cousin occurred on Tuesday, July 17, 2007.

| Type | From | To | Time | Duration |
|------|------|-----|------|----------|
| Telephone | Cousin | Respondent | 12:05:06 | 0:00:20 |
| Text | Respondent | Cousin | 12:11 | |
| Text | Cousin | Respondent | 12:12 | |
| Text | Respondent | Cousin | 12:13 | |
| Text | Cousin | Respondent | 12:14 | |
| Text | Cousin | Respondent | 12:33 | |
| Text | Cousin | Respondent | 15:59 | |
| Telephone | Cousin | Respondent | 16:00:10 | 0:09:53 |

At an interview with ODC on August 1, 2012, respondent was asked if the trial judge had asked him to leave the courtroom during the trial or during jury selection. Initially, respondent replied "[n]o." However, respondent then remembered that he went into the courtroom during the trial and the trial judge texted him and told him to leave. Respondent stated the text occurred during a break in the trial. He explained that, in hindsight, he assumed the trial judge was "messing with" him. At the time, he thought the trial judge did not want him in the courtroom because he knew respondent's cousin was on the jury. Respondent said he and the trial judge were friends, and that texting with the trial judge was not uncommon.

During the ODC interview, respondent attempted to clear up the situation by stating that he now knows that he told the deputy solicitor and the assistant solicitor assigned to the case that his cousin was on the jury before selection, "before they went to jury qualifications." Respondent admits he gave different answers at different times to the same questions. Respondent stated he believed Cousin had disclosed the relationship during jury selection and, thus, the trial judge and the attorneys of record all knew of the relationship.

While going through the telephone and text records during the ODC interview, respondent stated he could not remember the specifics of any of the calls. Several of the calls were just seconds long and others were several minutes, but he could not recall the details of any particular conversation. When asked about the discrepancy between the number of actual contacts and the number of contacts revealed to the trial judge, respondent replied he was nervous and had no excuse. He also stated he had no memory of the calls because they

were short.[6]

Respondent admits he engaged in repeated *ex parte* contacts with Cousin throughout the trial until Cousin was excused after his relationship with respondent was disclosed. In addition to the Sunday evening telephone call before the trial, there were approximately thirty (30) other *ex parte* contacts between respondent and Cousin between Monday, July 9, 2007, the first day of trial, and Tuesday, July 17, 2007, when Cousin was excused. Respondent admits the *ex parte* contacts correlated closely with recesses and breaks during the trial.

### *Law*

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 3.4(c) (lawyer shall not knowingly disobey an obligation under the rules of a tribunal); Rule 3.5 (lawyer shall not communicate *ex parte* with a juror during the proceeding unless authorized to do so by law or court order); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to the administration of justice).

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1), RLDE (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct).

### *Conclusion*

We accept the Agreement and suspend respondent from the practice of law in this state for six (6) months, retroactive to June 1, 2013, the last date of his employment with the Ninth Circuit Solicitor's Office.[7] Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission and, within nine (9) months of this opinion, shall complete and provide proof of completion of the Legal Ethics

---

6. Although the misconduct occurred in July 2007, the disciplinary matter was not considered by the Commission on Lawyer Conduct until the conclusion of the trial and appeal in the underlying criminal case.

7. On May 29, 2013, respondent resigned his position with the Ninth Circuit Solicitor's Office effective June 1, 2013.

210

and Practice Program to the Commission. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.

BEATTY, J., not participating.